1  MICHAEL DOUGLAS CARLIN
   PO Box 34664
2  Los Angeles, California 90034
   Telephone: (310) 463-4527
3
   Plaintiff (appearing *pro se*)
4

FILED
2018 DEC -7 PM 12: 01

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LACV18 10190-DMG-FFMx

| MICHAEL DOUGLAS CARLIN, | Civil Action No. |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | **(1) COPYRIGHT INFRINGEMENT;** |
| FGW PRODUCTIONS LLC, and DOES 1 through 50, inclusive, | **(2) UNFAIR COMPETITION;** |
| Defendant. | **(3) BREACH OF CONTRACT;** |
| | **(4) BREACH OF IMPLIED CONTRACT;** |
| | **(5) BREACH OF CONFIDENCE** |
| | **DEMAND FOR JURY TRIAL** |

PAID
DEC - 7 2018
Clerk, US District Court
COURT 4612

No.                                                         COMPLAINT

# COMPLAINT

Plaintiff Michael Douglas Carlin ("Carlin"), appearing *pro se*, upon his own personal knowledge and upon his information and belief, alleges as follows:

## NATURE OF THE ACTION

1. Carlin is the co-creator of a reality/docuseries television Concept, tentatively entitled "Simona & George Papadopoulos" ("Concept"). The Concept involved following the lives of George and Simona Papadopoulos.

2. Carlin signed an Agreement with Simona Mangiante-Papadopoulos on October 31, 2018 to produce a documentary, that became the basis for this show.

3. Carlin and Simona Papadopoulos pitched the Concept to Entertainment Executive Chris Nassif on November 9, 2018. Subsequent to Nassif passing on the project, Carlin pitched the concept to FGW Productions, LLC ("FGW"). FGW sent over to Carlin an exclusive Shopping Agreement and Carlin developed the strategy to get this Shopping Agreement signed.

4. FGW and the other defendants, separately and in collusion with each other and other individuals attempted to push Carlin out of the project. This was a collaborated effort to steal copywritten material from Carlin, whom defendants knew to be of limited personal resources.

5. Thus, in this action, Carlin seeks to enforce his rights in the Concept through this action for copyright infringement arising under 17 U.S.C. § 501, unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*, and the common law of the State of California, breach of implied contract and breach of confidence arising from defendants' misappropriation, unauthorized use and exploitation of Carlin's copyrighted and protected Concept, and defendants' unexcused infringement and breach of an implied contract and breach of confidence that existed between Carlin and defendants.

## JURISDICTION AND VENUE

-1-

No:                                                                                                                    COMPLAINT

6. This Court has jurisdiction over defendants because defendants reside in or otherwise have sufficient minimum contacts with the State of California, in that they transact business in the State of California out of which the causes of action alleged herein arose.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1367(a).

8. This Court has personal jurisdiction over defendants by virtue of each defendant's systematic and continuous contacts with California and by the actions in California giving rise to this Complaint, including in this Judicial District.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## THE PARTIES

10. Carlin is an artist, writer, producer and creator of film and television Concepts. He is a citizen of the United States and resides and conducts business in Los Angeles, California.

11. Defendant FGW Productions, Inc. is a Suspended California corporation headquartered in Los Angeles with offices at 10445 Wilshire Blvd, Suite 702, Los Angeles, California 90024.

12. Carlin also names as additional defendants Does 1 through 50, inclusive ("Doe Defendants"). Carlin currently does not know the actual identity of these Doe Defendants and therefore sues said defendants by such fictitious names. Carlin is informed and believes that each of these Doe Defendants contributed to and is jointly and severally responsible for the wrongs hereinafter alleged in this Amended Complaint. References to "defendant(s)" shall include the Doe Defendants.

13. Carlin is informed and believes, and therefore alleges, that at all times herein mentioned each defendant was the agent, servant and/or employee of each of the other defendants and in doing the things hereinafter alleged, was acting in the

-2-

1  course and scope of its authority as such agent, servant and/or employee, and with
2  the permissions and consent of each of the other defendants.

## FACTS COMMON TO EACH CLAIM FOR RELIEF

4      14.    Carlin contacted a representative of FGW and pitched the show to his on November 12, 2018. FGW expressed interest and asked for Carlin to arrange a meeting and get Shopping Agreement signed. FGW agreed to make Carlin a producer on the show prior to meeting or Shopping Agreement being signed.

8      15.    FGW texted Carlin, "We gotta make this happen," "I need an exclusive shopping agreement," "Can you help." Carlin replied "yes." Carlin then texted FGW, "OK, what agency are you repped by?" FGW responded, "ICM." Carlin wrote back, "Perfect! That is a great marquis name we can use to close this." FGW then emailed over the shopping agreement to Carlin. FGW texted CARLIN, "Reading up on them, very interesting." CARLIN replied, "I know the good and bad, they are characters out of comic books, very interesting television, I will bring some interesting stories that are not generally known."

16      16.    On November 12, 2018, Carlin met with three representatives of FGW at the lobby of ICM. They discussed the strategy to get the Shopping Agreement signed. At 4:15 George and Simona Papadopoulos arrived and Carlin and the FGW representatives got them to sign the Agreement. Upon signing the group all moved up to a meeting at ICM where the show was pitched to the Agency.

21      17.    CARLIN delivered the Papadopoulos couple to a meeting inside the lobby of ICM, at 10250 Constellation Blvd, Century City, CA 90067. Prior to this meeting CARLIN disclosed to the FGV team how he had signed Simona to his Agreement. He then walked them through how the team was going to close this deal. When the Papadopoulos couple arrived CARLIN walked them over to the team and the plan to get them to sign the Exclusive Shopping Agreement commenced and the Shopping Agreement was signed. The entire group (Simona

1 Papadopoulos, George Papadopoulos, CARLIN, and the FGV team) all proceeded
2 to a meeting upstairs to pitch the show to ICM.

3     18. CARLIN was very prominent in that pitch meeting suggesting many
4 aspects of the show that have been incorporated into the current version of the show.
5 Upon leaving that meeting FGW leaned into CARLIN and said, "we are rich, we
6 will make a lot of money."

7     19. ICM was unable to pre-sell the show on a tight timeframe.

8     20. On November 19, 2018 CARLIN texted FGW, "Got a great angle for
9 one episode." FGW responded, "start sending over… gonna (sic) have you and Leah
10 crafting episodes." Carlin delivered to FGW a thumbdrive with interview questions
11 for the first episode.

12     21. FGW subsequently found outside funding for the show and on
13 November 21, 2018 texted CARLIN saying, "I will announce tonight. We're
14 moving forward. Greenlight."

15     22. On November 23, 2018 CARLIN and FGW clarified "This is our
16 show," confirming the understanding that CARLIN and FGW were partners in this
17 show.

18     23. On November 23, 2018, FGW promised Carlin, Simona and George
19 that they would have contracts by tomorrow. That time passed and no contracts were
20 presented to either Carlin, George or Simona.

21     24. FGW flew Carlin, George, & Simona to Chicago on November 24th.
22 Again there was a promise of contracts but no contracts ever appeared.

23     25. Carlin was starting to be frozen out of having anything to do with the
24 creative on this project. Carlin was instructed to wrangle both George and Simona
25 and he executed his duties.

26     26. On November 26, 2018 Carlin was in George and Simona's room as
27 the film crew filmed and both George and Simona started to quarrel. Carlin was
28 asked by and FGW representative to leave the set. He responded sternly that he was

-4-

there to help "his friends" settle their differences. This became an excuse for Carlin to be banned from further filming as this representative stated she was afraid. This was a staged manipulation to keep Carlin out of the production process.

27. Subsequently, Carlin asked about his agreement and put FGW in touch with his representative, Chris Nassif to negotiate his contract.

28. The contract was presented on November 30th and did not reflect the understanding that FGW had with Carlin. The offer stripped him of any creator credit for creating the show, offered him a co-executive producer credit, and no money even though he had been working full time on the project since October 31, 2018.

29. On December 3rd, Carlin was advised that he was being sent to California with Simona and one other FGW representative. That was a ploy to get Carlin off of the Wisconsin set. When Simona and the FGW representative returned to Wisconsin, Carlin was not included. FGW representatives were instructed not to provide Carlin with any information on locations, times, or dates.

30. Carlin has been frozen out of the production that he created. All communication between Carlin and FGW has ceased.

## FIRST CLAIM FOR RELIEF
### (Copyright Infringement)

31. Carlin realleges and incorporates by reference the allegations contained above as though fully set forth herein.

32. This is a claim for copyright infringement in violation of 17 U.S.C. § 501.

33. Carlin is the owner of the copyrights in the Concepts, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

34. Carlin has complied in all respects with 17 U.S.C. §§ 102, *et seq.*, the statutory deposit and registration requirements thereof, and all of the laws governing

federal copyrights, to secure the exclusive rights and privileges in and to the Concept.

35. Carlin is informed and believes, and on that basis alleges, that defendants willfully and deliberately infringed Carlin's copyrights in the Concept by copying and distributing portions of the Concept.

36. Carlin is informed and believes, and on that basis alleges, that defendants made profits and have been unjustly enriched by reason of their infringement of Carlin's copyrights in the Concept.

37. As a direct consequence of defendants' aforementioned acts, Carlin has been damaged in an amount to be determined through discovery.

38. As a direct consequence of defendants' aforementioned acts, Carlin has suffered, and will continue to suffer, irreparable injury. Such damage and irreparable injury will continue and will increase unless and until defendants are enjoined from their wrongful acts.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition)

39. Carlin realleges and incorporates by reference the allegations contained above as though fully set forth herein.

40. This is a claim for unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.*, and the common law of the State of California.

41. Carlin invested substantial time, skill, and money in developing his copyrighted materials. Defendants appropriated and used Carlin's copyrighted works at little or no cost to defendants. Defendants' appropriation and use of Carlin's property was without the authorization or consent of Carlin. The actions of defendants have resulted in business loss and injury to Carlin.

42. Defendants' actions constitute unlawful, unfair, malicious or fraudulent business practices in violation of California Business and Professions Code §§ 17200, *et seq.*, and the common law of the State of California.

43. Carlin is informed and believes, and on that basis alleges, that defendants have made profits and have been unjustly enriched by reason of their infringement of Carlin's copyrights in the Concept.

44. As a direct consequence of defendants' aforementioned acts, Carlin has been damaged in an amount to be determined through discovery.

45. As a direct consequence of defendants' aforementioned acts, Carlin's ability to generate revenue by licensing the Concept has been greatly impaired.

46. As a direct consequence of defendants' aforementioned acts, Carlin's reputation has been damaged.

47. As a direct consequence of defendants' aforementioned acts, Carlin has suffered, and will continue to suffer, irreparable injury. Such damage and irreparable injury will continue and will increase unless and until defendants are enjoined from their wrongful acts.

48. Defendants' willful acts of unfair competition constitute fraud, oppression and malice. Accordingly, Carlin is entitled to recover exemplary damages pursuant to California Civil Code § 3294(a).

## THIRD CLAIM FOR RELIEF

### (Breach of Contract)

49. Carlin realleges and incorporates by reference the allegations contained above as though fully set forth herein.

50. Carlin and FGW entered into a verbal agreement, as described above.

51. Carlin performed all conditions, covenants and promises required on his part to be performed in accordance with assignments of FGW.

52. FGW breached the agreement by undertaking the actions described above, without Carlin's permission.

No:                                                                                                                                          COMPLAINT

53. FGW's breaches agreement are ongoing, and unless FGW is enjoined by this Court, FGW will continue to disclose, use and/or exploit the Concepts without Carlin's permission in violation of the nondisclosure agreement.

54. As a direct and proximate result of FGW's breaches described herein, Carlin has suffered irreparable damages, including lost profits, and Carlin will continue to suffer irreparable damages in amounts to be proven at trial.

55. Carlin is entitled to a permanent injunction restraining FGW and its officers, agents and employees and all persons acting in concert with them from engaging in any further actions in violation of Carlin's rights under the agreement.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Contract)

56. Carlin realleges and incorporates by reference the allegations contained above as though fully set forth herein.

57. Carlin and defendants formed an implied-in-fact contract by their course of conduct described above.

58. Carlin presented the Concepts to defendants consistent with well-established customs and practices in the entertainment industry and on the mutually understood condition and bilateral expectation that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin.

59. In light of the well-established customs and practices of the entertainment industry and on the mutually understood condition and bilateral expectation that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin, defendants' actions and conduct implied and led Carlin to reasonably believe that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without

-8-

No:                                                                                                                    COMPLAINT

1 compensating Carlin in the form of payment, credit and other consideration to
2 Carlin.

3     60. Carlin performed all conditions, covenants and promises required
4 on his part to be performed in accordance with the terms and conditions of his
5 implied-in-fact contract with defendants.

6     61. Defendants breached the implied-in-fact contract by undertaking the
7 actions described above, without Carlin's permission and/or without compensating
8 Carlin in the form of payment, credit and other consideration to Carlin.

9     62. Defendants' breaches of the implied-in-fact contract are ongoing, and
10 unless defendants are enjoined by this Court, defendants will continue to disclose,
11 use and/or exploit the Concepts without Carlin's permission and/or without
12 compensating Carlin.

13     63. As a direct and proximate result of defendants' breaches described
14 herein, Carlin has suffered irreparable damages, including lost profits, and Carlin
15 will continue to suffer irreparable damages in amounts to be proven at trial.

16     64. Carlin is entitled to a permanent injunction restraining defendants and
17 their officers, agents and employees and all persons acting in concert with them
18 from engaging in any further actions in violation of Carlin's rights.

19     65. Defendants' conduct was malicious, fraudulent, oppressive and
20 intended to injure Carlin. Consequently, Carlin is entitled to punitive damages.

### FIFTH CLAIM FOR RELIEF

**(Breach of Confidence)**

23     66. Carlin realleges and incorporates by reference the allegations contained
24 above as though fully set forth herein.

25     67. Carlin and defendants formed confidential relationship by their course
26 of conduct described above.

27     68. Carlin presented the Concepts to defendants consistent with well-
28 established customs and practices in the entertainment industry and on the mutually

understood condition and bilateral expectation that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin.

69. In light of the well-established customs and practices of the entertainment industry and on the mutually understood condition and bilateral expectation that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin, defendants' actions and conduct implied and led Carlin to reasonably believe that defendants would not disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin.

70. Carlin performed all conditions, covenants and promises required on his part to be performed in accordance with the terms and conditions of his confidential relationship with defendants.

71. Defendants breached the confidential relationship with Carlin by undertaking the actions described above, without Carlin's permission and/or without compensating Carlin in the form of payment, credit and other consideration to Carlin.

72. Defendants' breaches of the confidential relationship with Carlin are ongoing, and unless defendants are enjoined by this Court, defendants will continue to disclose, use and/or exploit the Concepts without Carlin's permission and/or without compensating Carlin.

73. As a direct and proximate result of defendants' breaches of the confidential relationship described herein, Carlin has suffered irreparable damages, including lost profits, and Carlin will continue to suffer irreparable damages in amounts to be proven at trial.

74. Carlin is entitled to a permanent injunction restraining defendants and their officers, agents and employees and all persons acting in concert with them from engaging in any further actions in violation of Carlin's rights.

75. Defendants' conduct was malicious, fraudulent, oppressive and intended to injure Carlin. Consequently, Carlin is entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Carlin prays for judgment against defendants, and each of them, as follows:

A. For an injunction permanently enjoining defendants, and their officers, agents and employees and all persons acting in concert with them, from their unauthorized disclosure, copying, reproducing, distributing or publicly displaying (1) the Concepts, (2) any and all products and/or series based upon the Concepts (including without limitation "Simona & George") and (3) inducing, causing, materially contributing to and profiting from the foregoing acts committed by others.

B. For an order that defendants destroy all material of every nature and kind, in their possession, custody or control, that are based upon the Concepts.

C. For restitution in the amount of the benefit to defendants from their breaches described herein.

D. For general damages sustained by Carlin.

E. For special damages sustained by Carlin.

F. For lost profits sustained by Carlin.

G. For disgorgement to Carlin of defendants' profits from their breaches described herein.

H. For an accounting.

I. For punitive and exemplary damages.

J. For Carlin's costs.

K. For prejudgment interest.

L.   For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Carlin hereby demands a jury trial for all issues in this lawsuit.

Dated: December 7, 2018

*/s/ Michael Douglas Carlin*
MICHAEL DOUGLAS CARLIN
Plaintiff (appearing *pro se*)